IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

TRENT PEAVY,                                   CASE NO.:

        Plaintiff,

vs.

CARNIVAL CORPORATION, a foreign
corporation d/b/a CARNIVAL CRUISE
LINE,

        Defendant.
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

The Plaintiff, TRENT PEAVY, by and through his undersigned counsel, hereby files his complaint for damages against the Defendant, CARNIVAL CORPORATION, a foreign corporation d/b/a CARNIVAL CRUISE LINE, and alleges as follows:

### PARTIES

1. Plaintiff, TRENT PEAVY, was and is a citizen of and domiciled in the state of California and resides in Torrance, California.

2. At all times material, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (herein after referred to as Carnival or Defendant or Cruise Line) was and is a citizen of the foreign nation of Panama and incorporated in the State of Florida and maintains its principal place of business in the State of Florida, located at 3655 NW 87 Avenue, Doral, FL 33178.

## JURISDICTION AND VENUE

3. This court has jurisdiction based on diversity of citizenship 28 USC §1332 because this is an action for damages that exceeds this Court's minimum jurisdictional requirements, to wit, $75,000.00 exclusive of all interest and costs; and the parties are completely diverse as the Plaintiffs is from California and the Defendant is from Florida.

4. This Court has Jurisdiction over this matter pursuant to 28 USC §1333(1) (admiralty) and the contractual language contained in the cruise ticket.

5. Venue in the United States District Court for Southern District of Florida is appropriate pursuant to the forum selection clause contained in the passenger ticket between Plaintiff and Defendant.

6. At all times material, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE personally or through an agent:

   A. Operated, conducted, engaged and/or carried on a business venture in the State of Florida, and in particular Miami-Dade County, Florida;

   B. Maintained its principal place of business in Miami-Dade County, Florida;

   C. Was engaged in substantial business activity in the State of Florida, and in particular, in Miami-Dade County, Florida;

   D. Operated vessels and provided vessels for cruises in the waters of this state;

   E. Committed one or more accts as set forth in F.S. §§48.081, 48.181 and 48.193, which submit Defendant to jurisdiction and venue of this Court. Further, Defendant is subject to jurisdiction of the Court due to the foregoing and 28 U.S.C. §1333;

   F. The acts of Defendant set out in the Complaint occurred in whole or in part in Miami-Dade County and/or the State of Florida.

7. All conditions precedent to the institution of this action have been satisfied, or otherwise excused, including the pre-suit notice required by the terms and conditions of Defendant's cruise ticket.

## GENERAL ALLEGATIONS

8. On or about March 17, 2022, the plaintiff, TRENT PEAVY, was lawfully and legally on board the Carnival Miracle as an invitee and paying passenger with the actual and/or constructive consent of the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE.

9. On or about March 17, 2022, the Defendant owned and operated a passenger cruise ship known as the Carnival Miracle, such vessel being used as a passenger cruise vessel.

10. On or about March 17, 2022, while anchored in the waters off of Cabo San Lucas, Mexico, the Carnival Miracle, utilized the water taxi service to transport passengers to shore from the ship and vice versa. The Carnival Miracle provided the water taxi as a means of ingress and egress to the vessel. The Carnival Miracle therefore owed a nondelegable duty to the Plaintiff to ensure a safe means of ingress and egress to the vessel by use of the water taxi.

11. On or about March 17, 2022, at the time of the incident, Plaintiff was exiting a water taxi to get back on to the Carnival Miracle ship. While exiting the water taxi the Plaintiff fell on the platform used in the disembarking area, injuring his right ankle.

12. Plaintiff had just stepped onto the disembarking platform from the water taxi when he fell.

13. Due to the rough seas and the failure of the Defendant, Carnival to ensure a safe embarkation process from the water taxi to the ship, the Plaintiff lost his balance and fell on the platform on the Carnival Miracle injuring his right ankle.

14. Plaintiff felt immediate pain in his right ankle and leg.

15. Plaintiff fell because the Carnival Miracle Cruise failed to provide a safe means of egress from the water taxi to the ship during rough seas.

16. In the embarkation area of the Carnival Miracle there is a yellow-colored platform where passengers are supposed to step on to and walk while leaving the water taxi to board the ship. A picture of this area is seen below. One can see that in rough seas this platform must be secured to the ship so passengers can safely disembark the water taxi and get onto the ship. The Carnival Miracle crew was aware of the dangers of slipping on this platform as evidenced by the "caution wet floor" sign and the slip resistant strips that appear to be present on the disembarking platform.

17. The Carnival Miracle crew failed to ensure the safe disembarkation of the Plaintiff, failed to have the proper procedures in place to ensure safe disembarkation, and failed to have the proper railing or assistive devices in place to allow passengers to safely disembark the water taxi.



18. Due to the Carnival Miracle crew negligently allowing the passengers to disembark in rough seas, not providing appropriate assistive devices or railings, and not properly assisting the Plaintiff to exit the water taxi, the Plaintiff fell on the platform and fractured his right ankle.

19. Realizing their negligence after the Plaintiff fell, the Defendant, Carnival Miracle Crew moved the water taxi disembarkation process to a different area of the ship where there were calmer seas to allow for safe disembarkation of passengers.

20. At all times material, Carnival was aware that the disembarkation of passengers was taking place and that the platform was dangerously slippery as evidence by the "caution wet floor sign" and the slip resistant strips on the platform. Therefore, Carnival had actual

or constructive notice that the disembarking of passengers must be performed in a safe manner. Rough seas made the process more difficult, and the Carnival crew failed to:

    A. Make sure the disembarkation platform was properly secured and steady.

    B. Make sure there was adequate assistance in place to ensure safe disembarkation.

    C. Make sure the water taxi was in a safe place and position to perform the disembarkation.

    D. Warn Plaintiff of the dangerous nature of the disembarkation.

21. After the accident, the Plaintiff contacted the ship's medical center and requested immediate medical assistance. Thereafter, Plaintiff was taken to the ship's Medical Center.

22. Carnival's Chief Security Officer, on board the Carnival Miracle, was notified and met with the Plaintiff to complete a passenger injury statement.

23. As a result of this incident, Plaintiff suffered severe injuries to his right leg and right ankle. Plaintiff was diagnosed with a fractured and dislocated right ankle. Plaintiff required right ankle surgery, in the form of an open reduction internal fixation (ORIF). Thereafter, despite initial conservative management, and the initial ankle surgery, described above, Plaintiff has been left with a permanent injury to his right ankle and leg.

## COUNT I — CARNIVAL'S VICARIOUS LIABILTY FOR THE ACTIVE NEGLIGENCE OF ITS EMPLOYEES

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-three (23) as though originally stated herein.

24. On or about March 17, 2022, while a passenger on the Carnival Miracle, the Plaintiff, TRENT PEAVY, was disembarking from a water taxi back onto the cruise ship when he

slipped and fell. As a result, Plaintiff sustained serious and permanent injuries to his right leg and ankle.

25. At all times material hereto, Carnival and Carnival's crew members owed a nondelegable duty to Plaintiff, TRENT PEAVY, to exercise reasonable care under the circumstances for his safety.

26. In this claim of vicarious liability against Carnival for the active negligence of its employees in assisting the Plaintiff off the water taxi and back onto the ship, notice to carnival is not required. However, although notice is irrelevant to a claim for vicarious liability due to the active negligence of Carnival's crewmembers, Carnival was on notice of prior incidents involving passengers suffering injuries while transferring from the water taxis to the boat and vice versa. Carnival was additionally on notice of the dangers present with the disembarkation of passengers as evidenced by the "caution wet floor" sign and the slip resistant strips that are present on the platform in the disembarkation area.

27. Carnival's disembarkation crew negligently assisted the Plaintiff back on to the ship by failing to assist him, failing to warn Plaintiff of the slippery nature of the disembarkation platform, and failing to place the water taxi in a position, next to the ship, where the rough seas would not significantly affect the safe disembarkation.

28. Carnival's crewmembers did not take sufficient precaution to protect Carnival's passengers.

29. Therefore, Carnival's crewmembers breached their duty of care to the Plaintiff and Carnival is therefore vicariously liable for the active negligence of its employee for failing to ensure a safe disembarkation for the Plaintiff, failing to have the proper

procedures in place to ensure safe disembarkation, and failing to have the proper railing or assistive device to allow passengers to safely disembark the water taxi.

30. As a direct and proximate result of the active negligence of Carnival's employees, the disembarkation crew, for which Carnival is vicariously liable, Plaintiff, TRENT PEAVY, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

31. WHEREFORE, Plaintiff, TRENTY PEAVY, demand judgment, interest and costs against Defendant, CARNIVAL CORPORATION, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

## COUNT II – CARNIVAL'S DIRECT LIABILITY FOR NEGLIGENCE

Plaintiff realleges, adopts, and incorporates by reference the allegations on paragraphs one (1) through twenty-three (23) as though originally stated herein.

32. On or about March 17, 2022, while a passenger on the Carnival Miracle, the Plaintiff, TRENT PEAVY, while disembarking from a water taxi back onto the cruise ship, slipped and fell. As a result, Plaintiff sustained serious and permanent injuries to his right leg and ankle.

33. The dangerous condition of the disembarkation platform and the procedure for disembarkation were known to the Defendant or had existed for a sufficient length of time, such that the Defendant should have known, or discovered their existence through

the exercise of reasonable care. In fact, the Defendant was aware of the dangers of slipping while disembarking on this platform as evidenced by the existence of a "caution wet floor" sign and the existence of slip resistant strips on the platform itself.

34. At all times material hereto Defendant, CARNIVAL CORPORATION, owed a nondelegable duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

35. Defendant breached its duty to provide Plaintiff with reasonable care under the circumstances through the following acts and/or omissions:

    A. Failing to make sure the platform was properly secured.

    B. Failing to make sure there was adequate assistance in place to ensure safe disembarkation.

    C. Failing to make sure the water taxi was in a safe place and position to perform the disembarkation.

    D. Failing to warn the Plaintiff about the dangerous slippery nature of the disembarkation platform.

    E. Failing to have the proper procedures in place to ensure safe disembarkation,

    F. Failing to have the proper railing or assistive devices to allow passengers to disembark the water taxi in a safe and secure manner.

36. The above act and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for such acts and/or omissions.

37. At all times material hereto, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient

length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through Defendant's prior incidents involving passengers injured while transferring from the water taxis to the boat and vice versa and also their knowledge of the slippery nature of the platform by their use of yellow slip resistant strips and a yellow caution sign.

38. As a direct and proximate result of Defendant's negligence, Plaintiff, TRENT PEAVY, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

39. WHEREFORE, Plaintiff, TRENT PEAVY, demands judgment, interest and costs against Defendant, CARNIVAL CORPORATION, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

## COUNT III – CARNIVALS DIRECT LIABILITY FOR NEGLIGENT FAILURE TO WARN

Plaintiff realleges, adopts, and incorporates by reference the allegations on paragraphs one (1) through twenty-three (23) as though originally stated herein.

40. On or about March 17, 2022, while a passenger on the Carnival Miracle, the Plaintiff, TRENT PEAVY, while disembarking from a water taxi back onto the cruise ship, slipped and fell as he was not warned of the dangerous slippery condition of the disembarkation

platform due to the rough seas. As a result, Plaintiff sustained serious and permanent injuries to his right leg and ankle.

41. This dangerous condition was actually or constructively known to carnival as they made the decision to disembark their passengers from the water taxi back onto the ship in these rough conditions which created a dangerous and slippery platform where their passengers were to disembark. In fact, the Defendant was aware of the dangers of slipping while disembarking on this platform as evidenced by the existence of a "caution wet floor" sign and the existence of slip resistant strips on the platform itself.

42. This dangerous condition was also known to the Defendant because it trains its crew of the proper setup and procedure for the transition of the cruise's passengers, such as the Plaintiff, to and from water taxis.

43. At all times material hereto, Defendant, CARNIVAL CORPORATION, owed a duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

44. At all time material hereto, it was the duty of Defendant to warn passengers, such as the Plaintiff, of dangers that were known, or reasonably should have been known, to Defendant in places where passengers, such as Plaintiff, are invited to or may reasonably be expected to visit, especially in an area such as this where the Defendant knows many of the ships passengers will be disembarking from the water taxi back onto the ship.

45. Defendant breached its duty to warn the Plaintiff through the following act and/or omissions:

   A. Failure to warn the plaintiff of the slippery nature of the Platform used to disembark.

    B. Failure to warn the Plaintiff of the risks and/or dangers associated with a slippery platform caused by the splash of the rough seas.

    C. Failure to warn passengers and Plaintiff of all accidents previously occurring on the disembarking platform while disembarking from a water taxi to the ship and vice versa.

46. The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff would have not slipped and fell had Defendant and/or its agents, servants, and/or employees adequately warned and/or communicated the forgoing to the plaintiff.

47. At all times material hereto, the surface of the subject platform was unreasonably dangerous as it had been wet from the splashing of the rough seas.

48. At all times material hereto, Defendant knew of the foregoing dangerous conditions causing the Plaintiff's incident and failed to correct and/or warn the Plaintiff about them, or the foregoing dangerous condition conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected and/or warned the Plaintiff about them.

49. Insofar as it relates to conditions that the Defendant did not create, Defendant's knowledge was or should have been acquired through prior incident(s) and/or through its maintenance and/or inspections of the subject area, and its HESS policies, procedures and crew.

50. As a direct and proximate result of Defendant's negligence, Plaintiff, TRENT PEAVY, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization,

surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

51. WHEREFORE, Plaintiff, TRENT PEAVY, demands judgment, interest and costs against Defendant, CARNIVAL CORPORATION, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

### COUNT IV – CARNIVAL'S DIRECT LIABILITY FOR NEGLIGENT FAIURE TO MAINTAIN

Plaintiff realleges, adopts, and incorporates by reference the allegations on paragraphs one (1) through twenty-three (23) as though originally stated herein.

52. On or about March 17, 2022, while a passenger on the Carnival Miracle, the Plaintiff, TRENT PEAVY, while disembarking from a water taxi back onto the cruise ship, slipped and fell as he was not warned of the dangerous slippery condition of the platform due to the rough seas. As a result, Plaintiff sustained serious and permanent injuries to his right leg and ankle.

53. This dangerous condition was actually or constructively known to Carnival as they made the decision to disembark their passengers from the water taxi back onto the ship in these rough conditions which would create a dangerous and slippery platform where their passengers were to disembark. Furthermore, the Defendant was aware of the dangers of slipping while disembarking on this platform as evidenced by the existence of a "caution wet floor" sign and the existence of slip resistant strips on the platform itself.

54. At all times material hereto Defendant, CARNIVAL CORPORATION, owed a duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

55. Defendant and/or its agents, servants, and/or employees breached its duty to maintain through the following acts or omissions:

    A. Failure to adequately and regularly inspect and maintain the platform used to disembark from the water taxi to the cruise ship and vice versa to determine if it was unreasonably slippery due to the splashing waves from the rough seas; and/or

    B. Failure to maintain a reasonably dry and safe disembarking area for the plaintiff and similarly situated passengers to disembark from the water taxi to the ship and vice versa; and/or

    C. Failure to have and maintain sufficient assistive devices such as railings to assist passengers in transferring to and from water taxis; and/or

    D. Failure to properly clean the subject platform, to avoid it becoming dangerously slippery.

56. The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for Defendant's failure to adequately inspect and/or properly and sufficiently maintain the subject platform to determine whether it was unreasonably dangerous due to the wet and slippery surface caused by the splashing waves of the rough seas.

57. At all times material hereto, the subject platform was wet, slippery, and unreasonably dangerous.

58. At all times material hereto, Defendant knew of the foregoing dangerous conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient length of time so that defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through Defendant's maintenance and/or inspections of the subject platform and/or through prior incidents involving passengers who were injured while disembarking from a water taxi to the cruise ship and vice versa and/or improperly and insufficiently maintained disembarking platforms on Defendant's vessels and/or other vessels reported within the cruise industry.

59. As a direct and proximate result of Defendant's negligence, Plaintiff, TRENT PEAVY, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

60. WHEREFORE, Plaintiff, TRENT PEAVY, demands judgment, interest and costs against Defendant, CARNIVAL CORPORATION, a trial by jury and any such other relief to which the Plaintiff may be justly entitled

WHEREFORE, the Plaintiff, TRENT PEAVY, Demands Judgment for damages against the Defendant, CARNIVAL CORPORATION, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) plus all other rewards recoverable under Florida law. The Plaintiff demands a trial by jury.

Case No.:

DATED this 5th day of January 2023.

                                FRIEDLAND | CARMONA
                                Attorneys for Plaintiffs
                                1430 South Dixie Highway, Suite 305
                                Coral Gables, Florida 33146
                                Tel:   (305) 661-2008
                                Fax:  (305) 661-2001
                                Email: email@friedlandlawgroup.com

                                BY_____
                                   Jonathan R. Friedland, Esq.